HOOPER, Chief Justice
(dissenting).
I dissent, and I write to explain why I agree with Justice Maddox’s dissenting opinion. The class action is a unique action at law. Unlike a normal plaintiff, the plaintiff member's of the class need not even appear at court. This aspect of the class action was enough to cause at its inception a great deal of controversy.[2] It is critical that courts, in particular the highest court of this State, make sure that the rules surrounding the use of the class action be strictly enforced. The potential for abuse of procedure is accentuated in unique types of actions like the class action.
The federal courts have noticed the problem and have recently sought to restrict class actions by preventing the loose application of the rules. In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir.), cert. den., 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995) (decertification of class because certification would effectively act to coerce defendants into settling); In re American Medical Systems, Inc., 75 F.3d 1069 (6th Cir.1996) (plaintiff class did not meet the four elements required for Rule 23, F.R.Civ.P., certification); Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir.1996) (variations in state law would control the outcome and made a *839 nationwide class unmanageable); Georgine v. Amchem Products, Inc., 83 F.3d 610 (3d Cir.1996) (settlement class must be held to the same standards as a litigation class). Recently, the Civil Rules Advisory Committee, the committee that proposed the 1966 amendments to Federal Rule 23 that created the modern class action, has been reviewing Rule 23 in an attempt to regain some control over its 1966 creation. The problem in the case at bar is perhaps unique to Alabama, but the efforts that are being made at this time to rein in federal class actions is indicative of the problems that can arise if the rules governing class actions are not strictly and carefully followed.
We have a ease filed in a county where venue is patently improper. Yet, the trial judge, anticipating that a class action will be certified, has said he will not transfer the ease to the proper county. The practical implication of such a decision is to encourage forum shopping. Based on such reasoning, as long as a class action may be certified sometime in the future, venue is proper wherever the plaintiff chooses to file the action. This rationale destroys the venue principle and is clearly a subversion of Alabama law regarding venue. This Court’s approval of such a decision by a trial judge encourages violation of Amend. 328, § 6.11, Const. of Ala.1901, which states that, by the exercise of its rulemaking power, this Court “shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein ” (emphasis added).
I understand that it can be argued that the defendant waived the venue issue by filing a motion for transfer based on the statutory forum non conveniens provision. I also understand why the plaintiff amended the complaint to add the contract claim. However, I see too much potential for abuse of the class action in this type of decision by a trial court. I consider the threat this case poses to Alabama’s rules regarding venue to outweigh any procedural concern over waiver. This Court has a responsibility to assure the public that abuses of this kind will not continue. We must discourage forum shopping, and we must not allow the courts of this State to go beyond the mandate of Amend. 328, § 6.11.

. The traditional reference to the group litigation of equity in. the 17th century has been used as a historic justification for the modern class action of the 20th century. However, Yeazell has effectively revised that history to show that early group litigation involved social groups that were already cohesive entities that chose representatives before ever appearing in court. The reasons for that early group litigation bear little resemblance to the justifications given for the modern class action. In the 18th and 19th centuries, group litigation disappeared from the reports. See Stephen C. Yeazell, Group Litigation and Social Context: Toward a ñistory of the Class Action, 77 Col. L.Rev. 866, 867, 872, 877-78 (1977) ("every sixteenth- and seventeenth-century case of group litigation I have found involves the members of rural agricultural communities— manorial tenants, villagers, and parishioners"; "early group litigation did not perform the task which it does in modern class litigation — the overcoming of transaction costs, costs which in the typical modern representative suit are insuperable"; "To the modern observer ... a requirement of individual consent in advance of the suit is at odds with the central purpose of the device [the class action] — overcoming of the costs of organizing an unconnected mass of individuals into a litigative entity”).